IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY A. BOGAN,

    Plaintiff,                  No. CIV S-02-1408 FCD KJM P

    vs.

DAVID L. RUNNELS, et al.,

    Defendants.             FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Defendants have filed a motion for summary judgment, alleging that plaintiff has failed to exhaust his administrative remedies as to defendants Runnels and Briddle; that neither Runnels' nor Briddle's actions violated plaintiff's Eighth Amendment right to be free from violence; and defendants Mericle and Barron were not deliberately indifferent to plaintiff's medical needs. The motion by defendants Runnels and Briddle will be construed as a motion to dismiss, for reasons discussed below.

/////

/////

/////

/////

1

I. <u>Exhaustion Of Administrative Remedies</u>

  The Prison Litigation Reform Act (PLRA) provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

28 U.S.C § 1997e(a). "Conditions of confinement" subject to exhaustion have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2); <u>Smith v. Zachary</u>, 255 F.3d 446, 449 (7th Cir. 2001); <u>see also</u> <u>Lawrence v. Goord</u>, 304 F.3d 198, 200 (2d Cir. 2002). Exhaustion of such remedies is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).

  A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir.), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Alameida v. Wyatt</u>, 540 U.S. 810 (2003). In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. <u>Id</u>. at 1119-20. Defendant bears the burden of proving plaintiff's failure to exhaust. <u>Id</u>. at 1119.

  The California prison grievance procedure has several layers, culminating in the third, or Director's, level review. Cal.Code Regs tit. 15, §§ 3084.1- 3084.5. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims, unless a step of the grievance process is not available to plaintiff. Cal. Code Regs. tit. 15, § 3084.5. In addition, to satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint. <u>Porter v. Nussle</u>, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"); <u>Brown v. Sikes</u>, 212 F.3d 1205, 1209 (11th Cir. 2000) (1997e(a)

/////

1 requires that a prisoner provide as much relevant information as he reasonably can in the
2 administrative grievance process); cf. Ngo v. Woodford, 403 F.3d 620, 631 (9th Cir. 2005)
3 (administrative remedy not "available" if grievance has been rejected as untimely despite prison
4 officials' discretion to accept late claims).

5 Plaintiff alleges he was injured on May 11, 2001, when defendant Briddle ordered
6 guards to fire at African American inmates who were involved in an altercation with Hispanic
7 inmates on the yard at High Desert State Prison. Complaint (Compl.) at 3. He further alleges
8 the melee occurred on the day defendant Runnels discontinued the policy of subjecting inmates
9 to thorough searches before allowing them onto the yard. Compl., Supplemental Pages (Supp.)
10 2-3.

11 Defendants Runnels and Briddle claim plaintiff did not submit grievances about
12 either of these claims. They offer a copy of a grievance plaintiff filed several months after the
13 May incident, complaining about his transfer to Calipatria State Prison, and a declaration from
14 the appeals coordinator at High Desert State Prison (HDSP), who avers he has searched the
15 HDSP database of grievances but has not found any grievance filed by plaintiff concerning
16 excessive force or the failure to protect him from violence. Def'ts' Statement of Undisputed
17 Facts in Supp. of Mot. for Summ. J. (SUF), Ex. A at 13 (grievance) & Ex. E (declaration of H.
18 Wagner).

19 Plaintiff counters that a group of African American inmates filed a joint grievance
20 that was never returned to them; plaintiff has not made this assertion under oath or otherwise
21 supported his claim. Pl.'s Response to Mot. for Summ. J. (Opp'n) at 2. He also offers a copy of
22 a claim he filed with the state Board of Control, seeking compensation for the injuries he
23 received as a result of the actions of defendants Runnels and Briddle. Opp'n, Ex. A.

24 The Board of Control does not play a role in the administrative grievance process,
25 but rather is one part of the machinery for claims made under the California Tort Claims Act
26 (CTCA). See Barry v. Ratelle, 985 F. Supp. 1235, 1238 (S.D. Cal. 1997) (finding inmate need

1 not follow CTCA procedures to exhaust); <u>Rumbles v. Hill</u>, 182 F.3d 1064, 1070 (9th Cir. 1999),
2 <u>overruled on other grounds</u>, <u>Booth</u>, 532 U.S. at 734.  Accordingly, plaintiff's claim to that body
3 does not satisfy the PLRA requirement.

4        Defendants have produced evidence showing plaintiff did not file any grievances,
5 either processed or screened out, concerning staff misconduct or this incident.  Plaintiff's only
6 unverified response is to say that he was a member of a group that submitted a joint grievance.
7 This bare assertion does not overcome defendants' showing.  <u>See</u> <u>Wyatt v. Terhune</u>, 315 F.3d at
8 1120; <u>cf</u>. <u>Ngo</u>, 403 F.3d at 625.  The motion to dismiss by defendants Runnels and Briddle
9 should be granted.

10 II.  <u>Motion For Summary Judgment</u>

11   A.  <u>Summary Judgment Standards Under Rule 56</u>

12        Summary judgment is appropriate when it is demonstrated that there exists "no
13 genuine issue as to any material fact and that the moving party is entitled to a judgment as a
14 matter of law."  Fed. R. Civ. P. 56(c).

15       Under summary judgment practice, the moving party

16     always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the
17     pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes
18     demonstrate the absence of a genuine issue of material fact.

19 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the
20 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary
21 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers
22 to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,
23 after adequate time for discovery and upon motion, against a party who fails to make a showing
24 sufficient to establish the existence of an element essential to that party's case, and on which that
25 party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof
26 concerning an essential element of the nonmoving party's case necessarily renders all other facts

4

immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, or other admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,

5

477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On September 5, 2002, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B. Analysis

In his complaint, plaintiff claims he was injured during the riot on May 11, 2001; one of those injuries was to the back of his right shoulder. Supp. at 4. He avers he was denied adequate medical care for the shoulder injury from May 11, 2001, until October 26, 2001. Id. at 5. His claim against defendant Mericle focuses on two dates: he alleges he saw defendant Mericle on July 9 and 24, 2001, but Mericle did not follow through on his promise to have various tests conducted on plaintiff's shoulder. Id. As a result of the delayed and denied treatment, plaintiff is in pain and has lost partial use of his right arm. Id. at 6.

Defendant Baron handled the appeals of plaintiff's grievances about his medical care. Id. at 5.

Defendants have submitted copies of plaintiff's medical records covering a variety of visits and ailments, along with a declaration from the custodian of records. See Fed. R. Evid. 803(6). Defendant Mericle treated plaintiff on a number of occasions for other ailments and

6

complaints. See, e.g., SUF, Ex. D at 13 (progress note from 6/18/01; plaintiff complained of weight loss, asthma, and possible cancer).

On July 3, 2001, defendant Mericle prescribed Tylenol and Motrin to plaintiff after plaintiff complained of shoulder pain and directed plaintiff to the clinic for a check up. SUF, Ex. D at 14, 17. On July 9, 2001, defendant Mericle ordered a series of tests unrelated to plaintiff's claim of shoulder pain. SUF, Ex. D at 17.

On July 24, 2001, defendant Mericle wrote orders for a number of medications related to plaintiff's asthma and had plaintiff admitted to the clinic for treatment of asthma. SUF, Ex. D at 22, 33-34. Upon admission, plaintiff complained of a "creaking pain" in his right shoulder, which he attributed to an incident in the yard. SUF, Ex. D at 32. Plaintiff was discharged on July 31, 2001 after treatment for asthma. SUF, Ex. D at 33, 40.

On August 22, 2001, plaintiff complained of shoulder pain and atrophy in his arm, but not to defendant Mericle. He was referred to the orthopedic line. SUF, Ex. D at 52. Defendant Mericle saw plaintiff again on September 10, 2001. Mericle wrote:

> There has been a concern about the right shoulder. I saw him and examined him carefully in the clinic and dictated a note, but somehow the dictation did not work. I need to redo that so we can see where we are with this gentleman, because I cannot remember from that far back.

SUF, Ex. D at 54. On September 12, defendant Mericle gave plaintiff an injection to counteract the pain in his shoulder, which apparently provided some relief. SUF, Ex. D at 47, 55. On September 24, defendant Mericle ordered an x-ray of plaintiff's shoulder and referred plaintiff to Dr. Rohlfing, an orthopedist. SUF, Ex. D at 55.

Plaintiff's shoulder was x-rayed on October 5, 2001 but no fracture was found at that time. SUF, Ex. D at 58. On October 23 and 26, 2001, Dr. Rohlfing examined plaintff and noted that plaintiff's right arm had atrophied and was painful. SUF, Ex. D at 57, 60.

Plaintiff argues that the records make clear the delay in medical treatment for his shoulder, which caused his right arm to atrophy. Opp'n at 4-5.

1  In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care does not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997).

To establish deliberate indifference, plaintiff must show that defendants knew of and disregarded an excessive risk to his health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin, 974 F.2d at 1059.

Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be demonstrated by the way in which prison officials provide medical care. Id. at 1059-60. However, a showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998). Instead, an inmate must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991).

Defendant Mericle has not satisfied his initial burden of showing the absence of a triable issue on the question of deliberate indifference to plaintiff's serious medical needs. Adickes v. S.H. Kress, 398 U.S. 144, 160 (1970); Nissan Fire & Marine Ins. Co, Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). Plaintiff's failure to submit authenticated,
/////

admissible evidence in opposition to the motion for summary judgment has no impact on this determination. Id.

Plaintiff's medical records show that he told defendant Mericale of his shoulder injury at least as early as July 3, 2001, yet nothing was done beyond a prescription for pain relievers for a condition that ultimately led to atrophy of the arm. SUF, Ex. D at 14, 17; see also id. at 32, 33, 40. In September, defendant Mericle recognized that plaintiff had mentioned his shoulder pain when he was admitted to the clinic at the end of July, but that nothing had been done, ostensibly because of a problem with dictation. SUF, Ex. D at 54. A reasonable trier of fact could draw an inference from these records that defendant Mericle purposely ignored plaintiff's complaints of pain when first made. Accordingly, viewing the facts and drawing the reasonable inferences in the light most favorable to plaintiff, this court cannot find defendant Mericle has established the absence of a genuine issue of material fact as to whether his delay in referring plaintiff for orthopedic treatment constituted deliberate indifference. Scicluna v. Wells, 345 F.3d 441, 446-47 (6th Cir. 2003).

Defendant Baron, in contrast, has made an adequate showing in support of his motion for summary judgment. Plaintiff describes defendant Baron's participation as the medical officer assigned to review plaintiff's grievances and appeals concerning his medical treatment. Moreover, plaintiff notes that defendant Baron granted his appeals about the lack of medical treatment. Supp. at 5; see also Compl., Ex. 6 (First and Second Level Appeal Responses). Baron's actions do not demonstrate his deliberate indifference to plaintiff's medical needs. Farmer v. Brennan, 511 U.S. at 837; cf. Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (a party can plead himself out of court).

### C. Qualified Immunity

The framework for evaluating a claim of qualified immunity was established in Saucier v. Katz, 533 U.S. 194 (2001). A court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

conduct violated a constitutional right?" Id. at 201.  If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail.  Id.  If, however,

> a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.... The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Id. at 201-02 (internal quotes, citations omitted); Anderson v. Creighton, 483 U.S. 635, 640 (1987).  In this case, as discussed above, defendant Mericle has failed to establish the absence of his deliberate indifference to plaintiff's shoulder injury.

The next determination -- whether the contours of the right were clearly established -- is an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 201.  "For a right to be clearly established it is not necessary that the very action in question have previously been held unlawful."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  However, the inquiry into the legal landscape must focus on "particularized" instances, not those cases "at a high level of generality."  Brousseau v. Haugen, _ U.S. _, 125 S. Ct. 596, 599 (2004).

The law regarding the medical treatment of prisoners was clearly established in 2001, for in Estelle v. Gamble the Supreme Court recognized that prison officials could not intentionally delay or deny access to treatment for serious medical needs.  429 U.S. at 104-05.  Moreover, in 1989, the Ninth Circuit recognized that a delay in providing dental treatment for a painful condition established an Eighth Amendment violation.  Hunt v. Dental Dept., 865 F.2d 198, 201 (9th Cir. 1989).  Here, plaintiff has alleged defendant Mericle delayed referring him for an orthopedic evaluation of his shoulder, which in turn led to pain and atrophy of the muscle in his right arm; plaintiff's medical records show that defendant Mericle was aware of plaintiff's

/////

complaints at least as early as July, but did nothing until September.  Mericle thus is not entitled to qualified immunity.

   IT IS HEREBY RECOMMENDED that:

   1. The motion for summary judgment filed by defendants Runnels and Briddle be construed as an unenumerated motion to dismiss under Fed. R. Civ. P. 12(b) and be granted.

   2. Defendant Baron's motion for summary judgment be granted.

   3. Defendant Mericle's motion for summary judgment be denied.

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 30, 2005.

                _____
                 UNITED STATES MAGISTRATE JUDGE

2
boga1408.57